Dear Representative Bruce:
This office is in receipt of your recent request for an opinion of the Attorney General in regard to a private citizen's use of a public facility. You indicate that the owner of a local skating rink is teaching skating in the gym of a public school at a charge payable to him of five dollars per child with no payment to the school. You ask if this is legal.
Our inquiry to your office has indicated these lessons are being conducted after school hours. However, we do not know if the lessons are considered a part of any physical education program of the school.
We note that in addition to the prohibition in Art. VII, Sec. 14
La. Const., against the loan, pledge, or donation of public funds, that R.S. 17:81(B) provides as follows:
 Each school board may permit school buildings to be used outside of regular school hours for academic purposes including but not limited to tutoring and study hall. The Board shall adopt rules and regulations governing the terms and conditions, including fees if any, under which such buildings shall be used.
This office has recognized a school board may permit a school building to be used outside of regular school hours for an "academic purpose". While finding such use permissible in Atty. Gen. Op. No. 93-694, it concluded as follows:
 However, a review of the jurisprudence and attorney general opinions indicates that parish school boards are without authority to use or utilize any property dedicated to school purposes for any other purpose than that of public education. The jurisprudence seems to indicate the city authorities can make such casual and incidental use of a building as long as it is not inconsistent with the main purpose for which it was erected.
It was concluded therein that despite payment to the school of a percentage of the adverting proceeds the school building could not be used for radio broadcasting outside of regular school hours since it did not constitute an "academic purpose". In reaching this conclusion reference was made to an earlier opinion which held the school property could not be used as a meeting place for transaction of business for dances by sororities and fraternities, 1938-40, pg. 997, and an opinion that concluded school property could not be used for construction of a swimming pool for the children of the city, 1930-32, pg. 477.
However, in Atty. Gen. Op. No. 91-181 this office recognized that athletics are a necessary and desirable complement to academics in the educational process, both for recreation and for competition. It was stated, "The use of public funds and facilities to provide athletic experiences for students is within the interpretation of Art. VII, Sec. 14 contained in Guste v.Nicholls College Foundation, supra; it is authorized by the constitutional duty to provide a public education." It was further concluded NSU might keep horses for students registered in equine courses, but whether there should be a fee or not for boarding horses of high school students "depends upon the legal relationship between NSU and the school. It was stated, "The relevant question is, does NSU have an obligation or duty established by law to provide facilities to support the educational purpose of the high school located on its campus? If the answer is affirmative, the provisions of the boarding privileges to such high school students is supported by a legal duty and therefore constitutional."
We cannot make the factual determination whether the skating lessons fall within the category of "academic purposes" as an athletic component in the schools program so as to be permissible under R.S. 17:81, and therefore not prohibited under the constitutional provision against donation of the use of public property, Art. VII, Sec. 14. The intent of the arrangement by the school for such instructions would have to be considered. However, as observed in Atty. Gen. Op. No. 91-181 the purpose of public education is best stated by the preamble to the education article of the Constitution, VIII, providing as follows:
 The goal of the public educational system is to provide learning environments and experiences, at all stages of human development, that are humane, just, and designed to promote excellence in order that every individual may be afforded an equal opportunity to develop to his full potential.
We hope this sufficiently gives you a guideline to determine the issues to be considered in reaching a conclusion to your inquiry.
Sincerely yours,
 RICHARD P. IEYOUB Attorney General
 By: __________________________ BARBARA B. RUTLEDGE Assistant Attorney General
BBR